Mrs. H. B. Rhodes, et al v. Earl Gill Enterprises, Inc.

4662                                        431 S.W. 2d 846

Opinion Delivered September 30, 1968

*U. A. Gentry* for appellants.

*David B. Whittington* for appellee.

Conley Byrd, Justice.    In this ejectment action both parties claim title from a common source, but under different descriptions.    Appellant Mrs. H. B. Rhodes claims the property as Lot 6, Block 18 of Crystal Springs, Arkansas.    Appellee Earl Gill Enterprises, Inc., claims that the proper description is Lot 5, Block 18 of Crystal Springs, Arkansas. The trial court found the issues in favor of Appellee.    Mrs. Rhodes appeals,

contending that appellee did not prove sufficient title to recover.

The land here involved was in Montgomery County until Act 120 of 1917. By that act the land became a part of Garland County. In Plat Book I at page 145 of the records of Montgomery County, there is a plat of the S½ NE, NW and NW SE Section 34, Township 2 South, Range 22 West designated as "Crystal Springs, Montgomery County, Arkansas." This plat shows the lots in the southern part of Block 18 to be numbered from East to West as 1, 2, 3, 4, 6 and 5. Lot 1 is bounded on the East by Vine Street and the South by Main Street (now Highway 270). Lot 5 is bounded on the West by Hill Street and the South by Main Street.

In the Garland County deed records, Vol. 272, Page 372, dated May 16, 1946, is a copy of a plat of Crystal Springs with the following notation:

"I, H. B. Smith of Hot Springs, do state on oath that the attached plat of Crystal Springs, Arkansas, is a duplicate original of the ancient plat prepared for Crystal Springs and obtained from F. N. Springer, who holds the original thereof, and the site of Crystal Springs, Garland County, Arkansas, is a duplicate original of the ancient plat pose of placing of record a plat of Crystal Springs, Arkansas, there being no recorded plat of said subdivision."

This plat does not contain any lot numbers for Block 18, but it does show the same lot dimensions and streets as the Montgomery County plat.

Pellie M. Smith, the common grantor received from Newt Peden by a warranty deed which reads: "Lot 1 and 2 in Block 26 and Lot 5 in Block 18 and all surplus lumber now located on these lots." Pellie M. Smith and her husband, Hiram T. Smith, built their house on Lots 1 and 2 of Block 26 which lay immediately west of

Hill Street and North of Main Street. They used the dedicated portion of Hill Street for their garden and built a service station on the lot to the east of Hill Street.

December 21, 1954, Pellie M. Smith conveyed to Mrs. Rhodes "Lot No. 6 and No. 4 in Block 18 located in the town of Crystal Springs, Garland County, Arkansas."

In 1953 or 1954 Orville M. Smith, a son of Hiram T. and Pellie M. Smith moved with his wife, Leona Smith, into the service station property on the Southwest corner of the intersection of Hill Street and Highway 270. Thereafter, on January 31, 1959, Hiram and Pellie Smith executed to Orville a deed describing the lands conveyed as: "All of Lots 5 in Block 18; Lots 1, 2, 4 and 8 of Block 26 of Crystal Springs, Arkansas . . . as shown of record at page 372, volume 272 of the Records of Deeds and Mortgages of Garland County, Arkansas." After divorce proceedings, Orville deeded Lot 5, Block 18, to Leona M. Smith, which she subsequently conveyed to appellee.

After Orville and Leona Smith moved on the property the building was enlarged. In 1958 it was made into a tavern. Appellee made additional improvements. After conveying to appellee, Leona rented the tavern for a year or more. When Leona moved out Mrs. Rhodes took over through her tenant, appellant Robert T. Lee.

The Garland County tax assessment records show that Lot 5 is the only lot in Block 18 on which any improvements have been assessed. In 1932 Hiram T. Smith leased the service station to Continental Oil Company. The lease contained these words: "This is a one story frame building, with a gravel driveway, located on lot number five, block number eighteen, in the City of Crystal Springs, Arkansas."

Leona Smith testified that Pellie M. Smith told her that the 1959 deed was a deed to the tavern. Pellie Smith testified that the gasoline pumps were on the lot in question and that it was the lot she got from Newt Peden when she got the deed to the home place in 1927. She described the tavern lot as being the hundred foot lot. It was her testimony that she intended to convey the little lot to Orville (the lot next to the lot to litigation is only twenty feet).

There was ample evidence to sustain the trial court's finding that the lot in controversy was conveyed by Pellie M. Smith to appellee's predecessor in title and not to appellant.

Appellant claims error because the Montgomery County plat was introduced. In so doing she points out that there is no filing date on the plat nor any showing as to who caused it to be placed on record. The clerk testified that it was recorded between a plat filed for record on July 5, 1889 and another instrument filed for record on July 12, 1889. The instrument obviously qualifies as an ancient document, *State* v. *Taylor,* 135 Ark. 232, 205 S.W. 104 (1918) and was properly introduced to shed some light on the lot numbering system.

Appellant's most serious contention is that Appellee failed to prove his title. Of course the general rule in ejectment is that the plaintiff must recover on the strength of his own title and not the weakness of the defendant's title, but this rule is greatly relaxed where both parties claim from a common grantor. *Spencer* v. *Pierce,* 172 Ark. 108, 287 S.W. 1019 (1926). The rule is stated in 25 Am. Jur. 2d EJECTMENT § 37 as follows:

> "It is a well-established principle in the law of ejectment that where both parties to an action claim title from the same third person, each is estopped to deny the validity of the title of such third person and the one having the better title derived from the

common source must prevail. The plaintiff, in the first instance, need go no further than the title of the person under whom both parties claim; and he may recover on proof of the better title from that source, even though his evidence indicated that the common-source title is bad.

"The rule is one both of convenience and justice and is based on the principle that it does not lie in mouth of one to dispute the title under which he claims. Although it debars the truth in the particular case and therefore is not infrequently characterized as odious and not to be favored, still it debars the truth only where its utterance would be the denial of a previous affirmation upon the faith of which persons had dealt and pledged their credit or expended their money."

The deed to Orville M. Smith referred to the recorded plat in Garland County which would obviously show the dimensions of the lot and its location with reference to the street. This, together with the testimony of various witnesses describing the location of the lot, was certainly sufficient to sustain this action in ejectment.

Further, if we should hold that the reference in appellee's deed to a lot in Crystal Springs, Arkansas does not constitute good title, the appellants are in the awkward position of having no title either. Thus appellee's prior peaceful possession would constitute good title in ejectment against appellants' intrusion, *Vanndale Special School District No. 6 v. Feltner*, 210 Ark. 743, 197 S. W. 2d 731 (1946).

For the first time on appeal, appellant makes the contention that appellee's deed describes lands in a different forty acre tract and that before it can maintain an action in ejectment it will be necessary to have the

deed reformed. We have consistently held that we will not consider a matter raised for the first time on appeal.

Affirmed.

JONES, J., not participating.